UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALFONZO WELLS, JR.

                         Plaintiff,

         v.                                          Case No. 20-cv-1510-pp

SGT HESTHEAVEN, SGT MORRIS,
SGT CLOPE, SGT ANDERSON,
JULIE MASTRONOIAD, MEND MEDICAL,
JEREMY HESKE, LIEUTENANT YOHN,
DEPUTY REED, DEPUTY HOLDENFELDT,
DEPUTY JEUNDERLY, DEPUTY GREEN,
DEPUTY JOHN C. HANRAHAN, CAPTAIN FRIEND,
RACINE PAROLE OFFICE, RACINE COUNTY JAIL,
RACINE SHERIFF'S DEPARTMENT,
SHERIFF CHRISTOPHER P. SCHMALING,
and THE STATE OF WISCONSIN,

                         Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 12), DENYING AS MOOT SECOND AND THIRD MOTIONS TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NOS. 14, 16), DENYING PLAINTIFF'S REQUESTS FOR APPOINTMENT OF COUNSEL (DKT. NOS. 3, 9, 17) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Alfonzo Wells, Jr., who previously was incarcerated at the Racine County Jail and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants held him against his will, mistreated him and abused him in violation of his civil rights. The plaintiff filed that complaint in the U.S. District Court for the Northern District of Illinois. Dkt. No. 1. On September 29, 2020, District Judge Manish S. Shah transferred the complaint and the plaintiff's motion for appointment of counsel (Dkt. No. 3) to this court

1

because the events alleged in the complaint occurred in Wisconsin. Dkt. Nos. 5, 6. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 12, 14, 16, and to appoint counsel, dkt. nos. 3, 9, 17, and screens his complaint, dkt. no. 1.

## I.    Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. Nos. 12, 14, 16)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On October 28, 2020—about a month after he filed the case—the plaintiff filed a motion to proceed without prepaying the filing fee. Dkt. No. 12. The motion indicated that he was in the Racine County Jail and that he had three small children. Id. at 1-3. At the end of the motion, the plaintiff said he'd been indigent since June 20, 2020 because the Racine County Jail had "THEFT [his] wallet of $300.50." Id. at 4. He stated that he had $33.30 in his inmate account, asserting that was his first and only dollar amount since June 29, 2020. Id.

The same day the court received the motion, it received a trust account statement that covered the period July 7, 2020 through October 6, 2020.[1] Dkt. No. 13. The statement showed that until October 5, 2020, he had had a negative trust account balance. On October 5, 2020, he received a deposit of $46.05, $10.50 of which was used to cover the negative balance. An additional $2.25 was used to pay for phone time and "Property Misc." Id. The statement sowed that as of October 6, 2020, the plaintiff's account balance was $33.30. Id.

On November 9, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $3.07. Dkt. No. 15. That same day, the court received from the plaintiff another motion to proceed without prepaying the filing fee. Dkt. No. 16. He advised the court that he was being charged $0.25 for getting a copy of his trust account statement and that he'd been charged that amount several times. He stated, "I personally mailed and submitted my 6-month transaction printout 5 times to 517 E Wisconsin Ave Rm: 362 Milwaukee, WI 53202 including in my Civil Complaint Package of each 3 civil cases that's active." Id. He stated that he was indigent and could not pay "the full filing fee," and asked to be allowed to proceed without prepaying the full filing fee. Id.

---

[1] The law required the plaintiff to file a statement covering the six months prior to the date he filed the complaint, so the statement should have covered April through September 2020. But in a complaint he filed in another lawsuit before this court, the plaintiff stated that he arrived at the Racine County Jail on June 29, 2020. Wells v. Anderson, Case No. 20-cv-1107, Dkt. No. 1 at 1. It appears that the trust account statement covered the time from the date the plaintiff arrived at the jail until a month or so after he filed this lawsuit.

3

On November 20, 2020, the court received from the plaintiff an affidavit indicating that because of poverty, he was not able to "pay the cost of all 3 actions or special proceeding or initial fee!" Dkt. No. 18. He stated that he had no income, no family support and no public assistance, and that he had had physical and mental disabilities since 2010 that prevented him from working. Id. at 1. The plaintiff stated that he "had one time balance of $35.35" in his account, but $10 was taken to pay medical costs on October 29, 2020. Id. at 2. He stated that he needed the remaining money "to order personal hyg[iene] such as soap, shampoo, toothbrush, toothpaste." Id. The affidavit was signed November 12, 2020 and notarized November 16, 2020. Id. at 1-2.

As indicated in these filings, the plaintiff has three lawsuits pending in the Eastern District of Wisconsin. On July 20, 2020, he filed Wells v. Anderson, Case No. 20-cv-1107. On October 22, 2020—three months after he filed the lawsuit—the plaintiff filed a trust account statement that covered the period July 7, 2020 through September 30, 2020. Id. at Dkt. No. 10. That statement showed that the plaintiff had a negative account balance of $10.50 as of September 30, 2020. Id. It showed that two weeks before he filed the complaint in that case, he had a balance of negative $10.00. Id.

The plaintiff filed this lawsuit—his second—on September 22, 2020. Dkt. No. 1. The court has described the trust account statement he filed in this case—while by the time he asked to proceed without prepaying the filing fee in this case he'd received a deposit, some of it had gone toward paying his negative balance, leaving him with just over $33.00 as of October 6, 2020.

4

On October 5, 2020, the plaintiff filed a third lawsuit. Wells v. Koski, Case No. 20-cv-1557. Two weeks later, on October 22, 2020, he filed a trust account statement in that case. Id. at Dkt. No. 9. The statement was updated through October 14, 2020. It showed that on October 7 and 8, the plaintiff had spent $2.00 on phone time and that on October 14, 2020 he spent $0.25 on "indigent property." Id. The statement showed that as of October 14, 2020, the plaintiff's balance was $31.50.

Finally, on December 21, 2020, the plaintiff paid the $3.07 initial partial filing fee in the last case—Case No. 20-cv-1557.

Under 28 U.S.C. §1915(b)(4), the court has the authority to waive a plaintiff's initial partial filing fee if he lacks both the "assets" and the "means" to pay it. The Seventh Circuit Court of Appeals has explained that "[i]t is not enough that the prisoner lacks assets on the date he files." Newlin v. Helman, 123 F.3d 429, 435 (7th Cir. 1997), overruled in part on other grounds by Walker v. O'Brien, 216 F.3d 626, 628-29 (7th Cir. 2000), and Lee v. Clinton, 209 F.3d 1025, 1027 (7th Cir. 2020). If that were the case, an incarcerated person could avoid paying the initial partial filing fee by spending what is in his trust account before filing his lawsuit. For that reason, courts construe the word "means" broadly. An incarcerated person may lack "assets" but still have "means" to pay the fee.

At one time, the plaintiff arguably had the assets to pay an initial partial filing fee. As of October 14—two weeks before he filed the trust account statement in this case—the plaintiff had $31.50 in his trust account. The court

issued the order requiring him to pay the initial partial filing fee on November 9, not quite a month later. But in his November 16, 2020 affidavit, the plaintiff stated that "medical" took $10.00 from his account on October 29, 2020, which, he asserted, took his balance down to $20. Dkt. No. 18 at 2. A month later, on December 21, 2020, the plaintiff paid the initial partial filing fee in one of the three cases; assuming he did not get any more deposits, that would have taken his balance down to less than $17.00. As the plaintiff pointed out in his affidavit, he needed to purchase hygiene items.

The plaintiff made the choice to file three lawsuits. Normally the court would expect him to be prepared to pay three filing fees (and, consequently, three initial partial filing fees). But given his explanation of his financial status, the financial history reflected in the three trust account statements he has filed and the plaintiff's recent history of living arrangements (discussed below), the court cannot conclude that the plaintiff has either the assets or the means to pay the initial partial filing fee. The court will not require him to pay the initial partial filing fee in this case. The court will construe the plaintiff's affidavits as a request to waive the initial partial filing fee and will grant that request and his motion for leave to proceed without prepaying the filing fee. Dkt. No. 12. The court will deny as moot the plaintiff's second and third motions to proceed without prepaying the filing fee. Dkt. Nos. 14, 16.

The PLRA, however, does not allow the court to waive the $350 filing fee. It says that an incarcerated plaintiff who asks to proceed without prepaying the filing fee is nonetheless "required to pay the full amount of the filing fee." 28

U.S.C. §1915(b). Although the court is waiving the initial partial filing fee in the first two of the plaintiff's cases and allowing him to proceed without *pre*paying the filing fee in the third, he still owes a $350 filing fee in each of the first two cases and a balance of $346.93 in the last one—a total of $1,046.93. He must pay the $350 filing fee for this case over time as he is able.

## II.     Screening the Complaint

### A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff named as defendants fifteen staff members at the Racine County Jail, as well as a medical provider, a parole office, the Racine County Jail, the Racine County Sheriff's Department and the state of Wisconsin. Dkt. No. 1 at 1. Under the heading "Motion," on the first page of the complaint, the plaintiff lists the following:

> Humiliation, embarrassed, damage to person reputation/standing within the community, damage to person financial, economic, consumer business prospects and interests, P.R.E.A., neglect of duty, hostage, kidnap[], torture, THEFT, food tamper, mail tamper, depression, cruel and unusual punishment, severe pain and suffer, imminent bodily danger, physical and mental abuse, post-traumatic-STRESS-disorder, neglect of duty from all staff and employees at Racine County Jail (P.R.E.A.).

Id. at 1.

8

The complaint is four pages long; most of it consists of case citations and quotes from the cited cases. Tucked between the many case cites are factual allegations. The plaintiff alleged, for example, "[p]lacement in filthy and disgusting physical conditions and placement in filthy cells exposed of COV-19." Id. at 1. He alleged "municipality liable custom of unconstitutional conduct (abducting their duty to supervise and monitor the use of force and deliberately permitting a pattern of excessive force to develop and persist." Id. at 2. He alleged loss of property and stopping of mail and delaying filing lawsuits. Id. The court can't determine whether some of the factual statements were allegations that the plaintiff was making, or recitations of the facts from the case cited just prior to the factual statement. For example, the plaintiff cited Smith v. Leonard, 244 F. App'x 583, 584 (5th Cir. 2007), then wrote, "headaches, sinus problems, trouble breathing, blurred vision, exposure to toxic mold." Id. at 3. The court cannot determine whether the plaintiff was claiming that *he* suffered those conditions, or whether he was reciting conditions experienced by a party in Smith v. Leonard. He stated, "sleeping no mattress," "delay and insufficiency of medical treatment resulted physical effects," and "anxiety" in the same way. Id.

On the fourth page of the complaint, the plaintiff wrote the following:

Since 06/29/20-8/16/20 I filled over 70 urgent: Attention-Imminent Bodily Danger and Fear for life request/complaints to All staff and employees even to outside employees and NO response nor NOT ONE single medical care. From 06/29/20-08/16/20 I spent 33 consecutive days in a dirty filthy cold cell nits coming from the sink & toilet bed bugs on concrete bed in the cell 24 hours NO mattress, cover, sheets, shower, shave, nor phone calls also Food Tamper. I been sexually assaulted 6 times even by Jeremy Haske parole. I been

9

kidnapped, tortured, beatened by Jeremy Haske and officers from Racine Sheriff Department on 07/21/20—07/23/20 brought back to RCJ without my underwear, socks, and money. Officers and sergeants sexually assaulted me 2 twice and beat, hit, punch, mase me in the mouth, face, on 08/16/20 and made me take a picture of process for the world to see with mase on my face and no shirt on. They open up my legal mail 5 of them and send it back to me opened stating my mail needs to weigh 1.2 and not 1.3. They confiscated all my legal mail, legal papers, personal papers all my request/complaints I filed out my cell on 07/10/20, 07/19/20, 08/16/20 which I still have not gotten back. Officers stole $300.50 out my wallet. I been straped to a wheelchair for 5 hours straight with mase on my face, mouth, eyes and body and placed in a "rubber" room consist of NO toilet or sink for 5 hours. Im still enduring sever[e] life threatening pain and suffering. Im in Imminent Bodily Danger and Fear for my life DAILY. Pleading for help . . .

Id. at 4.

There are two pages beyond this. Both are photocopies of Inmate Request/Complaint forms completed by the plaintiff. The first is dated August 20, 2020. Id. at 5. It is addressed to the Department of Corrections Division of Community Corrections. It alleges that that on July 21, 2020, after the plaintiff was released from the Racine County Jail "by Jeremy Haske" (whom the plaintiff identified as "some new parole agent"), he and Haske got into Haske's van and Haske began soliciting sexual favors from the plaintiff. Id. The plaintiff says Haske pulled over to the side of the road and got in the back seat with the plaintiff, but that the plaintiff kicked him and pushed him off. Id. The plaintiff said that Haske apologized immediately and admitted he was wrong. Id. The plaintiff said that later, he told Haske he did not want Haske on his case and asked to have Haske dismissed immediately. Id.

The second complaint was dated August 18, 2020 and was addressed to the captain of the Racine County Jail "(Friend)". Id. at 6. While it is difficult to

10

read, this complaint appears to ask why the plaintiff had not received responses to any of the fifty complaints he'd filed about the issues he raised on page 4 of the complaint in this case. Id. at 6.

C.    Analysis

1.    *The Plaintiff's Location*

The plaintiff alleges that he suffered harm while he was at the Racine County Jail. On September 22, 2020, apparently while he was still at the jail, the plaintiff filed this lawsuit in the Northern District of Illinois. See Dkt. No. 1 at 8. Although the judge in the Northern District of Illinois transferred the case to this court only a week later, this court did not promptly screen the case. The result is that the plaintiff has moved several times since he filed the complaint.

On March 8, 2021, the court received from the plaintiff a letter explaining that his new address was the Stateville Correctional Center in Joliet, Illinois. Dkt. No. 25. On May 3, 2021, the court received another change-of-address notice from the plaintiff, indicating that his new address was 600 Linwood Road, P.O. Box 1327, Galesburg, Illinois. Dkt. No. 27. (The Hill Correctional Center is located at 600 Linwood Road in Galesburg, Illinois. https://www2.illinois.gov/idoc/facilities/Pages/hillcorrectionalcenter.aspx.) On May 10, 2021, the court received another letter, stating that the plaintiff had been residing at 11001 S. Wentworth Avenue in Chicago since May 8, 2021. Dkt. No. 28. (This is the address of the Cornerstone Recovering Community, a drug rehab facility. https://www.drug-rehab-headquarters.com/

11

illinois/facility/cornerstone-recovering-community-chicago-2/.) Finally, on August 5, 2021, the court received another change-of-address notice from the plaintiff. On this one, he put only the case number for his third case, <u>Wells v. Koski</u>, Case No. 20-cv-1557. In this notice, the plaintiff informed the court that his new address was 126 Ogden Street, Belvidere, IL 61008. Case No. 20-cv-1557 at Dkt. No. 28.

### 2. *The Plaintiff's Legal Claims*

The allegations the plaintiff scattered through the first three pages, and detailed on page 4, of this complaint (and that are reflected in the copy of the August 18, 2020 inmate complaint/request form) are almost identical to the allegations he made in <u>Wells v. Anderson</u>, Case No. 20-cv-1107, filed in the Eastern District of Wisconsin almost four months before the plaintiff filed this case in the Northern District of Illinois. In both cases, he described incidents of tampering with his legal papers, being held against his will, having his medical needs ignored, being subjected to excessive force, being sexually assaulted and being subjected to inhumane conditions of confinement. In this case, the plaintiff also alleges mail tampering, theft, exposure to COVID-19 and food tampering. But like the complaint in Case No. 20-cv-1107, the complaint in this case does not tell the court which of the defendants did these things to the plaintiff. In this case, as he did in Case No. 20-cv-1107, the plaintiff has provided the court with a list of defendants and a list of alleged violations, but he has not explained which defendants allegedly committed which violations.

"A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003) (citing Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir. 1981)). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." Colbert v. City of Chi., 851 F.3d 649, 657 (7th Cir. 2017) (citing Wolf-Lillie v. Sondquist, 699 F.2d 864, 869 (7th Cir. 1983)). To state a claim for which a federal court may grant relief, a plaintiff must tell the court the name of the person who committed the act or acts he complains of.

The only individual defendant in this case against whom the plaintiff made specific allegations is defendant Jeremy Haske. On page 4 of the complaint, the plaintiff said that he had been kidnapped, tortured and beaten by Haske. Dkt. No. 1 at 4. He stated that he had been sexually assaulted six times, "even by Jeremy Haske." Id. And in the photocopy of the August 20, 2020 inmate request/complaint form, the plaintiff alleged that in late July 2020, Haske began soliciting sexual favors from him during a van ride from the jail; he alleged that despite his rejection of Haske, Haske got into the back seat with the plaintiff and had to be fought off. Id. at 5. While barebones, these are specific allegations against a specific person—they sound like claims of excessive force and inhumane conditions of confinement.

Because the plaintiff was a pretrial detainee at the time of the alleged events, the court analyzes his claims under the Fourteenth Amendment's standard of objective reasonableness. Kingsley v. Hendrickson, 576 U.S. 389,

396-397 (2015) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)). The court looks at the facts and circumstances of the particular case and must view those facts and circumstances "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." <u>Id.</u> The court may consider such factors as

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

<u>Kingsley</u>, 576 U.S. at 397. This list is not exhaustive but illustrates some of the "objective circumstances potentially relevant to a determination of excessive force." <u>Id.</u>

To state a claim for unconstitutional conditions of confinement, a plaintiff must allege that a defendant or defendants subjected him to an excessive risk to his health or safety. <u>Quinn v. Wexford Health Sources, Inc.</u>, ___ F. 4th ___, 2021 WL 3485509, at *6 (7th Cir. Aug. 9, 2021) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)). A pretrial detainee who alleges unconstitutional conditions of confinement must "establish that a defendant 'acted purposefully, knowingly, or perhaps even recklessly' . . . ." <u>Self v. Bergh</u>, 835 F. App'x 873, 875 (7th Cir. 2020) (quoting <u>Miranda v. Cty. of Lake</u>, 900 F.3d 335, 353 (7th Cir. 2018)).

The plaintiff alleges that Haske beat, kidnapped, tortured and sexually assaulted him. He has not alleged facts that indicate that the plaintiff posed a

14

security risk to Haske. The plaintiff appears to allege that Haske did these things for no reason. Haske could not have accidentally or negligently beaten, kidnapped, tortured or sexually assaulted the plaintiff. Accepting the plaintiff's (admittedly sparse) allegations as true at this stage of the litigation, the court will allow the plaintiff to proceed against Haske on Fourteenth Amendment claims of excessive force and unconstitutional conditions of confinement.

The court will not allow the plaintiff to proceed in *this* lawsuit against any of the other defendants he listed on the first page of the complaint. The federal civil rights statute, 42 U.S.C. §1983, allows a plaintiff to sue any "person" who, acting under color of state law, violates that plaintiff's constitutional rights. The plaintiff has named several defendants who are not "persons." He named the State of Wisconsin. Dkt. No. 1 at 1. The Supreme Court held years ago that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989). See also, Rose v. Bd. of Election Com'rs for City of Chi., 815 F.3d 372, 374 n.2 (7th Cir. 2016). The court will not allow the plaintiff to proceed against the State of Wisconsin.

The plaintiff also named the "Racine Parole Office." Dkt. No. 1 at 1. In Wisconsin, probation and parole agents work for the Division of Community Corrections, part of the state Department of Corrections. https://doc.wi.gov/Pages/AboutDOC/CommunityCorrections/GeneralInformation.aspx. Like the State of Wisconsin itself, the Wisconsin Department of Corrections is not a "person" for the purposes of §1983. Andreola v. Wisconsin, 171 F. App'x 514,

515 (7th Cir. 2006) (citing <u>Lapides v. Univ. Sys. of Georgia</u>, 535 U.S. 613, 617-18 (2002); <u>Will v. Mich.</u>, 491 U.S. 58, 71 (1989)). The court will not allow the plaintiff to proceed against the "Racine Parole Office."

The plaintiff named the Racine County Jail and "Racine SHERIFF Department." Federal Rule of Civil Procedure 17(b) provides that the legal capacity of any entity other than an individual or a corporation to sue or be sued in federal court is determined by the law of the state where it is located. The Racine County Jail is not a "person." The Racine County Jail is a division of the Racine County Sheriff's Department. https://www.racinecounty.com/departments/sheriff-s-office. A sheriff's department is "not a legal entity separable from the county government which it serves and therefore, [is] not subject to suit." <u>Tate v. Milwaukee Cty. Sheriff's Dept.</u>, No. 08-C-1095, 2008 WL 5423984, at *3 (E.D. Wis. Dec. 29, 2008) (citing <u>Whiting v. Marathon Cty. Sheriff's Dep't.</u>, 382 F.3d 700, 704 (7th Cir. 2004)). The court will not allow the plaintiff to proceed against either the Racine County Jail or the Racine County Sheriff's Department.

Perhaps the plaintiff believes that Racine County—the county itself, the municipal entity—is responsible for the constitutional violations he alleges he suffered at the jail. But a local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978) (emphasis in original). A municipality may "be held liable under

16

§ 1983 only for its own violations of federal law." Los Angeles Cty. v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To state a claim for municipal liability, a plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook Cty., 833 F.3d 728, 734 (7th Cir. 2016)). The plaintiff has not alleged that the violations he has described were the result of an unconstitutional policy or custom of Racine County.

The plaintiff named "Mend Medical" as a defendant. Dkt. No. 1 at 1. He did not explain what role Mend Medical played in the events he described. It is likely that Mend Medical was a private corporation, a contract health care provider for Racine County. "Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices." Hahn v. Walsh, 762 F.3d 617, 640 (7th Cir. 2014) (quoting Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 675 (7th Cir. 2012)). But that means that the plaintiff must state facts indicating that whatever Mend Medical did to allegedly violate his rights was the result of a custom, practice or policy. The plaintiff has not made any such allegations. The court will not allow him to proceed against Mend Medical.

That leaves the remaining individual defendants: Sgt. Hestheaven, Sgt. Morris, Stg. Clore, Julie Mastronoiad, Lieutenant Yohn, Deputy Reed, Deputy Holdenfeld, Deputy Jeunderly, Deputy Green, Deputy John C. Hanrahn,

Captain Friend and Christopher Schmaling. Dkt. No. 1 at 1. The defendant sued several of these individuals in Case No. 20-cv-1107—Clore,[2] Hestheaven, Morris, Reed, Green, Friend, Schmaling and "Medical Staff Julie." <u>Wells v. Anderson</u>, Case No. 20-cv-1107, Dkt. No. 1 at 1. In Case No. 20-cv-1107, the plaintiff made most of the same allegations that he makes in this case. The plaintiff has not explained why he filed two, almost identical lawsuits against many of the same plaintiffs in two different federal courts, two months apart. Whatever the reason, he cannot simultaneously pursue almost identical claims against many of the same defendants in two cases. As the court explained in an order it issued in Case No. 20-cv-1107, a party cannot litigate the same issue in multiple cases; whichever case is resolved first will "preclude" re-litigating the same issues in the other cases. See, *e.g.*, <u>Waagner v. United States</u>, 971 F.3d 647, 657 (7th Cir. 2020). Even if, in this case, the plaintiff had explained which defendants allegedly committed which violations against him, the court would not have allowed him to proceed on those claims in two cases at the same time.

The court has issued an order indicating that the complaint in Case No. 20-cv-1107 does not state a claim, but giving the plaintiff the opportunity to amend that complaint. In this case, it will dismiss all the claims against all individual defendants except Haske. If the plaintiff wants to pursue claims of interference with access to the courts, excessive force, denial of adequate

---

[2] In both this case and Case No. 20-cv-1107, this name is difficult to read. It may be either "Clore" or "Clope."

medical care, mail and food tampering and unconstitutional conditions of confinement against Sgt. Hestheaven, Sgt. Morris, Stg. Clore, Julie Mastronoiad, Lieutenant Yohn, Deputy Reed, Deputy Holdenfeld, Deputy Jeunderly, Deputy Green, Deputy John C. Hanrahn, Captain Friend and Christopher Schmaling, he must put those claims in his amended complaint in Case No. 20-cv-1107.

As the court explained in the order it issued in Case No. 20-cv-1107, however, a plaintiff may not raise unrelated claims against different defendants in the same case. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). Under Rule 18(a), a plaintiff may bring multiple claims against the same defendant in one lawsuit. So, for example, the plaintiff may sue Defendant 1 for Claims A, B, C and D. Under Rule 20(a)(2), a plaintiff may bring the same claim against multiple defendants in one lawsuit. So, for example, a plaintiff may sue Defendants 1, 2, 3, 4 and 5 in one lawsuit if all of them allegedly committed the violation in Claim A.

> [B]ut Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a] 50-claim, 24-defendant suit produces, but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.

George, 507 F.3d at 607.

That means that, depending on which defendants were involved in which alleged violations, the plaintiff may not be able to bring all the claims he alleges—denial of access to the courts, excessive force, food tampering, mail

19

tampering, denial of adequate medical care, unconstitutional conditions of confinement—against all the defendants in a single lawsuit. If, for example, he alleges that two deputies took his mattress and made him sleep on a cold floor, but that two sergeants saw that he was in medical distress and refused to help him, he may have to select one of those claims to pursue in Case No. 20-cv-1107 and file a new lawsuit to bring the other claim.

The court also discussed in the order in Case No. 20-cv-1107 that instead of putting all his allegations in the complaint, the plaintiff subsequently had filed documents alleging different claims against different defendants, resulting in a "piecemeal" approach that appeared to anticipate that the court would read all the different documents and allow him to proceed in a single case on every allegation against every defendant in every document. The same problem exists in this case because the plaintiff has filed some documents in all three of his pending cases. About a month after he filed the complaint in this case, the plaintiff filed a motion asking the court to appoint him a lawyer. Dkt. No. 9. Actually, the *first page* of the document asked the court to appoint him a lawyer. Id. at 1. The last three pages appear to be a portion of this court's form complaint (the first page is missing), in which the plaintiff alleged that on September 6, 2020 (about two weeks before he filed the complaint in this case) he was exposed to toxic sewage in his cell at the Racine County Jail—an incident he had not alleged in the complaint itself and an incident he *did* allege in the third lawsuit he filed, Wells v. Koski. Id. at 2-4. The plaintiff filed this same document in Case No. 20-cv-1107.

20

Two months after he filed the complaint in this case, the plaintiff filed two affidavits. Dkt. Nos. 19, 20. These affidavits allege additional facts about events that took place after the plaintiff filed the complaint in Case No. 20-cv-1107. For example, in one affidavit the plaintiff alleges that C.O. Noonan—who is *not* a defendant in any of the cases—knowingly exposed him to the COVID-19 virus in September 2020. Dkt. No. 19 at 1. In the other, he alleges that named and unnamed officers—again, officers who are not defendants in any of the cases—retaliated against him by opening his mail and taking other actions. Dkt. No. 20. In the top, right-hand corner of these affidavits, the plaintiff listed the case numbers for all three of his pending cases, so the clerk's office filed the affidavits in all three cases, even though they did not involve any of the defendants named in any of the cases. He also filed in all three cases an affidavit dated January 8, 2021, reiterating the claims he made in Case No. 20-cv-1107 and in this case, but adding details. Dkt. No. 23 at 2.

As the court advised the plaintiff in its order in Case No. 20-cv-1107, the plaintiff must not list all three of his pending case numbers on every document he files. Before he files a document, he must decide which case it relates to. He must write the case number for that case—and only that case—on that document. When the court receives that document, the clerk's office staff will file the document in the case with that case number. If the plaintiff does not put a case number on a document or if (as he did with the affidavits) he puts all his case numbers on a single document, the court may direct the clerk's

office to return the document to the plaintiff unfiled and instruct him to select one case in which to file it.

Finally, in this case, the plaintiff seeks, among other things, "injunction relief," declaratory relief and "preliminary injunctions." Dkt. No. 1 at 1. The plaintiff no longer is incarcerated at the Racine County Jail, where the alleged wrongs occurred. He has not alleged that there is a likelihood he will be incarcerated at the Racine County Jail in the future. His claims for equitable relief are moot. See Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011) (concluding that prayer for injunctive relief was moot because plaintiff was transferred to a different facility and failed to allege "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains"); Bigbee v. Nalley, 482 F. Supp. 2d 1092, 1099 (W.D. Wis. 2007) (citing Robinson v. City of Chi., 868 F.2d 959, 966 n.5 (7th Cir. 1989), and Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996)) (same for claim seeking declaratory relief). The plaintiff is not entitled to injunctive relief under these circumstances, even though he has stated a claim against Haske.

## III. Motions to Appoint Counsel (Dkt. Nos. 3, 9, 17)

The plaintiff filed three motions asking the court to appoint a lawyer to represent him. Dkt. Nos. 3, 9, 17. In the first request, filed on the Northern District of Illinois form application, the plaintiff stated that he had not contacted any attorneys, that he was indigent and had no money and that he was being held hostage. Dkt. No. 3. That form was dated July 27, 2020. Id. at

2. In the second motion, dated October 9, 2020, the plaintiff stated that he was indigent. Dkt. No. 9 at 1. He stated that he had been writing to "multiple of attorneys across the State of Wisconsin" but that he had not received any responses; he said that he wrote to several law firms asking to be appointed counsel "through the City of Milwaukee, Wisconsin of legal counsel (pro-bono) through the Courts." Id. He asserted that the Racine County Jail had been tampering with his mail. Id. Finally, he stated that he understood that if the court appointed a lawyer but it turned out he was able to pay, the lawyer would share that fact with the court, and he stated that he understood that if he made any false statements in his request for counsel, his case would be dismissed. Id. The last motion asked the court to appoint the plaintiff a lawyer "that works with your Court and or a partner of the district court. Dkt. No. 17. He stated that he had no assets and that he had the expense of providing for his five-year-old daughter. Id.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" <u>Pennewell v. Parish et al.</u>, 923 F.3d 486, 490 (7th Cir. 2019) (quoting <u>Pruitt v. Mote</u>, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. <u>Pickett v. Chi. Transit Authority</u>, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second element, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." <u>Pennewell</u>, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." <u>Id.</u> This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." <u>Id.</u> at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." <u>Id.</u> at 491. In situations where the plaintiff files his motion in the early stages of the

24

case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not demonstrated that he made a good-faith effort to find a lawyer on his own. He has not provided the court with the names of any of the lawyers or law firms he contacted or explained when he did so. Even if he had provided the court with that information, the court would not appoint a lawyer to represent him at this point in the case. As the court has explained, it is dismissing all but one claim against one defendant. The next step in the process will be for the court to serve the complaint on defendant Jeremy Haske, and for Haske to answer or otherwise respond. After that, the court will issue a schedule for the parties to exchange information about the plaintiff's allegations. The plaintiff should be able to ask Haske for the information that the plaintiff needs. If, later, the plaintiff feels that the procedures have become too complicated for him to handle on his own, he may renew his request for the court to appoint him a lawyer.

## IV.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee and **WAIVES** the requirement that the plaintiff pay an initial partial filing fee. Dkt. No. 12.

The court **DENIES AS MOOT** the plaintiff's second and third motions to proceed without prepaying the filing fee. Dkt. Nos. 14, 16.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's requests for the court to appoint him a lawyer. Dkt. Nos. 3, 9, 17.

25

The court **DIRECTS** the Clerk of Court to update the plaintiff's address to 126 Ogden Street, Belvidere, IL 61008. The court will send all future mail to the plaintiff at that address.

The court **ORDERS** that defendants Sgt. Hestheaven, Sgt. Morris, Sgt. Clore, Sgt. Lt. Anderson, Julie Mastronoiod, Mend Medical, Lieutenant Yohn, Deputy Mrs. Reed, Deputy Holdenfeld, Deputy Jeunderly, Deputy Green, Deputy John C. Hanrahan, Captain Friend, Racine Parole Office, Racine County Jail, Racine Sheriff Department, Christopher Schmaling and the State of Wisconsin are **DISMISSED**.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant Jeremy Haske of the Department of Corrections' Division of Community Corrections under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Haske to file a responsive pleading to the complaint.

The court **ORDERS** that the plaintiff must pay the $350 filing fee as he is able.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The plaintiff must send each original document he wishes to file to the court at the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he moves or changes his address. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 13th day of September, 2021.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

27